**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**AMERIFACTORS FINANCIAL**
**GROUP, LLC,**

                    **Plaintiff,**

**v.**                                                    **Case No:  6:16-cv-1511-Orl-31DCI**

**MIKE B. MIKE, III,**

                    **Defendant.**

_____

**REPORT AND RECOMMENDATION**

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S THIRD AMENDED MOTION FOR DEFAULT JUDGMENT AGAINST MIKE B. MIKE, III (Doc. 20)** |
| **FILED:** | **April 6, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

**I.      BACKGROUND.**

**A.  The Agreements.**

The case stems from two factoring agreements between Trin Polymers, LLC (Trin), who is not a party to this action, and Amerifactors Financial Group, LLC (Plaintiff).  Doc. 1.

**1.  The 2014 Agreements.**

Trin and Plaintiff entered into the first factoring agreement on April 24, 2014 (2014 Factoring Agreement).  Docs. 1 at ¶ 7; 1-2 at 2-7.  Plaintiff and Mike B. Mike, III (Defendant)

entered into a guaranty agreement that same day (2014 Guaranty), in which Defendant guaranteed the obligations of Trin under the 2014 Factoring Agreement.  Docs. 1 at ¶ 8; 1-2 at 10-12.

The 2014 Factoring Agreement contained the following relevant provision governing the volume of accounts Trin was required to sell to Plaintiff:

> **Volume.** You will sell to us $11,000,000 of your Accounts (except cash sales) generated between the date of this Agreement and April 24, 2015.  During the term of this Agreement, we will purchase, in the aggregate, Accounts up to $11,000,000, subject to other terms and conditions of this Agreement.  You agree that we are entitled to recover damages if you fail to perform your obligations under this agreement.

Doc. 1-2 at 3.[1]  Plaintiff alleges that the 2014 Factoring Agreement renewed twice before Trin filed for bankruptcy in July 2016.  Doc. 1 at ¶¶ 13, 15, 17; *see* Doc. 1-2 at 3.  Plaintiff asserts that Trin sold Plaintiff the following accounts prior to filing bankruptcy:

| Term | Dates | Accounts |
|---|---|---|
| Original Term | April 24, 2014 – April 24, 2015 | $2,941,187.65 |
| First Renewal Term | April 24, 2015 – April 24, 2016 | $3,468,702.60 |
| Second Renewal Tem | April 24, 2016 – July 11, 2016 | $244,411.60 |

Doc. 1 at ¶¶ 12, 14, 17.  Plaintiff alleges that Trin fell short of the $11,000,000.00 volume requirement during each term of the 2014 Factoring Agreement, and, thus, breached the 2014 Factoring Agreement.  *Id*. at ¶ 25.  Plaintiff alleges that if Trin sold the requisite volume of accounts, it "would have earned profits of at least 3.25% on all such accounts."  *Id*. at ¶ 26.  Plaintiff, as a result, alleges that it suffered a total of $856,235.19 in lost profit damages as a result of Trin's breach of the 2014 Factoring Agreement.  *Id*. at ¶ 27.  Plaintiff alleges that Defendant was obligated to pay it the foregoing lost profit damages pursuant to the terms of the 2014

---

[1] Trin sold accounts to Plaintiff on a non-recourse basis under the 2014 Factoring Agreement. *See* Doc. 1-2 at 2-7.

Guaranty, but failed to do so.  *Id*. at ¶ 30.  Thus, Plaintiff alleges that Defendant has breached the 2014 Guaranty.  *Id*.

### 2. The 2015 Agreements.

Trin and Plaintiff entered into the second factoring agreement on December 30, 2015 (2015 Factoring Agreement).  Docs. 1 at ¶ 20; 1-2 at 22-28.  This agreement explicitly involved Trin's sale of Resintech Int'l, LLC accounts to Plaintiff after December 30, 2015.[2]  *Id*.  Plaintiff and Defendant entered into a guaranty agreement that same day (2015 Guaranty), in which Defendant guaranteed the obligations of Trin under the 2015 Factoring Agreement.  Docs. 1 at ¶ 21; 1-2 at 31-33.

The 2015 Factoring Agreement contained, in relevant part, a recourse provision, which provided:

> **Repurchase of Accounts.**  We may require that you repurchase, by payment of the unpaid Face Amount thereof together with any unpaid fees relating to the Purchased Account on demand, or charged, to the Reserve Account by us:
>
> . . .
>
> (b) all Purchase Accounts upon the occurrence of an Event of Default, or upon the termination date of this Agreement;
>
> (c) any Purchased Account which remains unpaid beyond one hundred fifty (150) days.
>
> . . .

---

[2] The undersigned notes that the 2015 Factoring Agreement, while explicitly referencing Resintech accounts in its volume provision, had the same definition of Trin's accounts as the 2014 Factoring Agreement.  Thus, arguably, the later agreement superseded the 2014 Factoring Agreement as to all of Trin's accounts, and not just the Resintech accounts.  Because, as discussed in this Report, the undersigned finds that Trin did not breach the 2014 Factoring Agreement, there is no need for the undersigned to determine whether the 2014 Factoring Agreement renewed or whether it was superseded by the 2015 Factoring Agreement.

Doc. 1-2 at 24.  Trin sold Plaintiff $121,288.80 in Resintech accounts under the 2015 Factoring Agreement prior to filing for bankruptcy.  Doc. 1 at ¶ 22.  The Resintech accounts have not been paid.  *Id.*  Thus, Plaintiff requested Trin repurchase the unpaid Resintech accounts pursuant to the foregoing recourse provision.  *Id.*  Plaintiff alleges that Trin is unable to repurchase the unpaid Resintech accounts because of its bankruptcy, and, thus, breached the 2015 Factoring Agreement.  *See Id.* at ¶ 28.  Plaintiff, as a result, alleges that it suffered a total of $121,288.80 in damages as a result of Trin's breach of the 2015 Factoring Agreement.  *See id.*  Plaintiff alleges that Defendant was obligated to pay it the foregoing amount to satisfy Trin's liability pursuant to the terms of the 2015 Guaranty, but failed to do so.  *Id.* at ¶ 30.  Thus, Plaintiff alleges that Defendant has breached the 2015 Guaranty.  *Id.*

## B.  The Complaint.

Plaintiff filed the Complaint against Defendant on August 24, 2016.  Doc. 1.  Plaintiff asserts two claims for breach of a guaranty.  *Id.*[3]  First, Plaintiff claims that Defendant, as discussed above, breached the 2014 Guaranty (Count I).  *Id.* at ¶¶ 25-27.  Second, Plaintiff claims that Defendant, as discussed above, breached the 2015 Guaranty (Count II).  *Id.* at ¶¶ 28-30.  Plaintiff seeks lost profit damages stemming from Defendant's breach of the 2014 Guaranty, and actual damages stemming from Defendant's breach of the 2015 Guaranty.  *Id.* at ¶ 31.

## C.  Clerk's Default.

Plaintiff filed a return of service indicating that Defendant was personally served with the summons and a copy of the Complaint on August 25, 2016.  Doc. 9 at 5.  Defendant did not respond

---

[3] Plaintiff failed to separate these claims into individual counts in the Complaint.  *See* Doc. 1. Plaintiff, though, has since acknowledged that it is asserting two claims for breach of a guaranty. Doc. 20 at 1.

to the Complaint in the time provided under the Federal Rules of Civil Procedure.  Thus, Plaintiff moved for clerk's default against Defendant on October 5, 2016.  Doc. 9.  The Clerk entered default against Defendant on October 11, 2016.  Doc. 10.

### D.  Motion for Default Judgment.

Plaintiff filed its Third Amended Motion for Default Judgment Against Mike B. Mike, III (the Motion) on April 6, 2017.  Doc. 20.[4]  Plaintiff maintains that it is entitled to default judgment against Defendant on Count I, and requests a total of $740,789.76 in lost profit damages.[5]  *Id*. at 5-10, 19-20.  Plaintiff also maintains that it is entitled to default judgment against Defendant on Count II, and, as a result, requests a total of $121,288.80 in actual damages.  *Id*. at 17-18, 20.

## II.    STANDARD OF REVIEW.

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.  First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.  Fed. R. Civ. P. 55(a).  Second, after obtaining clerk's default, the plaintiff must move for default judgment.  Fed. R. Civ. P. 55(b).  Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true,

---

[4] The undersigned denied Plaintiff's previous motions for default judgment for various reasons. Docs. 14; 19.

[5] This amount is less than the amount sought in the Complaint due to Plaintiff's application of an $115,445.43 set off.  Doc. 20 at 19-20.

adequately state a claim for which relief may be granted.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[6]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in their motion for default judgment.  If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment.  *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).  Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.  *Id.* (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)).  Therefore, even in the default judgment context, "[a] court has an

---

[6] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

obligation to assure that there is a legitimate basis for any damage award it enters[.]"  *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages).  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.  *See Adolph Coors*, 777 F.2d at 1543-44 (11th Cir. 1985).  However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").  A plaintiff may use affidavits in an effort to quantify their damages claim.  *Adolph Coors*, 777 F.2d at 1544.

III.   **DISCUSSION.**

 A.  **Subject Matter Jurisdiction.**

The parties are completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Doc. 1 at ¶¶ 2-3, 27-28, 31.  Therefore, the undersigned finds that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

 B.  **Personal Jurisdiction.**

Plaintiff has voluntarily submitted to the Court's personal jurisdiction, but Defendant, a California citizen, has not.  Thus, the Court must determine whether it has personal jurisdiction over Defendant.

"[I]t is well-established under Florida law, that if certain requirements are met, parties may, by contract alone, confer personal jurisdiction on the courts of Florida." *Upofloor Americas, Inc. v. S Squared Sustainable Surfaces, LLC*, Case No. 6:16-cv-179-Orl-37DCI, 2016 WL 5933422, at *6 (M.D. Fla. Oct. 12, 2016) (internal quotations omitted) (citing *Jetbroadband WV, LLC v. Mastec N. Am., Inc.*, 13 So.3d 159, 162 (Fla. 3d DCA 2009)).

> To confer jurisdiction on the courts of Florida, an agreement must:
>
> (1) include a choice of law provision designating Florida Law as the governing law, (2) include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida, (3) involve consideration of not less than $ 250,000, (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under its laws. Thus, as long as one of the parties is a resident of Florida or incorporated under its laws, and the other statutory requirements are met, sections 685.101–.102 operate irrespective of whether the underlying contract bears any relation to Florida and notwithstanding any law to the contrary.

*Jetbroadband*, 13 So.3d at 162 (citing Fla. Stat. §§ 685.101 and 685.102).

The undersigned finds that each of the requirements set forth above have been met.  First, the agreements at issue each contain a choice-of-law provision that designate Florida law as the governing law.  Doc. 1-2 at 11, 32.  Second, the agreements at issue each contain provisions wherein Defendant agrees to submit to the jurisdiction of Florida courts.  *Id*.  Third, the agreements involve consideration that exceeds $250,000.00.  *See* Doc. 1 at ¶¶ 18, 22-23, 27, 28, 31.  Fourth, there is nothing in the record to suggest that the agreements at issue violate the United States Constitution.  Fifth, Plaintiff is authorized to and does conduct business in Florida.  *Id*. at ¶ 2; *see Jetbroadband*, 13 So.3d at 162 (maintaining a place of business in Florida can satisfy the final statutory requirement).  Thus, since the agreements at issue satisfy the requirements of sections 685.101 and 685.102, the undersigned finds that the Court has personal jurisdiction over Defendant.  *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985) (explaining

that, if a forum-selection clause has "been obtained through freely negotiated agreements and [is] not unreasonable and unjust, . . . [its] enforcement does not offend due process.").

### C.  Clerk's Default.

Defendant was personally served with the summons and a copy of the Complaint on August 25, 2016.  Doc. 9 at 5.  A defendant may be served via personal service.  Fed. R. Civ. P. 4(e)(2)(A); Fla. Stat. § 48.031(1)(a).  Defendant had 21 days from the date of service – September 15, 2016 – to respond to the Complaint.  Fed. R. Civ. P. 12(a)(1)(A)(i).  Defendant neither appeared in this case nor responded to the Complaint.  Therefore, the undersigned finds that the Clerk properly entered default against Defendant.

### D.  Liability and Damages.

Plaintiff claims that Defendant breached the 2014 Guaranty and the 2015 Guaranty.  Doc. 1.  The undersigned will first address Plaintiff's claim that Defendant breached the 2014 Guaranty, and then proceed to address Plaintiff's claim that Defendant breached the 2015 Guaranty.

A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state to determine the substantive law to be applied in the case.  *Am. Family Life Assurance Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989).  The forum state is Florida.  Thus, the Court must apply Florida's choice-of-law rules, which provide that a court will enforce "choice-of-law provisions unless the law of the chosen forum contravenes strong public policy."  *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 311 (Fla. 2000)).

The agreements at issue each contain a choice-of-law provision that provides that the "validity, interpretation, construction, and enforcement" thereof is governed by Florida law.  Doc. 1-2 at 11, 32.  There is nothing in the record indicating that enforcing these choice-of-law

provisions will contravene any particular public policy.  Thus, undersigned finds that these choice-of-law provisions are enforceable, and will apply Florida law in addressing Plaintiff's claims for breach of a guaranty.

"A breach of guaranty claim is akin to a breach of contract claim under which the guarantor is alleged to have breached its promise by failing to pay the debt of another on the default of the person primarily liable for payment."  *Ecp Station I LLC v. Chandy*, Case No. 8:15-cv-2523-T-JSS, 2016 WL 3883028, at \*3 (M.D. Fla. June 29, 2016) (citing *New Holland, Inc. v. Trunk*, 579 So. 2d 215, 217 (Fla. 5th DCA 1991); *Swan Landing Dev., LLC v. Fla. Capital Bank, N.A.*, 19 So. 3d 1068, 1072 (Fla. 2d DCA 2009)).  A party asserting a claim for breach of contract under Florida law must establish: 1) the existence of a valid contract; 2) a material breach of the contract; and 3) damages resulting from the breach.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008)).   The undersigned, bearing these elements in mind, turns to Plaintiff's claims for breach of a guaranty.

### 1.  Plaintiff has failed to establish that Defendant breached the 2014 Guaranty.

Plaintiff maintains that Trin failed to satisfy the volume requirement in the 2014 Factoring Agreement for three consecutive years, and, thus, breached the 2014 Factoring Agreement.  Doc. 20 at 5.  As a result of that breach, Plaintiff asserts that it is entitled recover $740,789.76 in lost profits.  *Id*. at 5-9.  Plaintiff further maintains that Defendant is required to – and failed to – satisfy Trin's obligation to pay lost profit damages pursuant to the terms of the 2014 Guaranty.  *Id*. at 9-10.  Thus, Plaintiff claims that Defendant breached the 2014 Guaranty, and it seeks to recover its lost profit damages from Defendant.  *Id*.

A court "must give effect to the plain language of contracts when that language is clear and unambiguous." *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1246 (11th Cir. 2002) (citing

*Hamilton Constr. Co. v. Bd. of Pub. Instruction*, 65 So.2d 729, 731 (Fla. 1953)).  A contract is ambiguous where it "is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008) (quoting *Commercial Capital Res., LLC v. Giovannetti,* 955 So.2d 1151, 1153 (Fla. 3d DCA 2007)).  The interpretation of a written contract, including the question of whether a contract is ambiguous, is a matter of law.  *See Strama v. Union Fid. Life Ins. Co.*, 793 So.2d 1129, 1132 (Fla.1st DCA 2001).

The undersigned finds that Plaintiff has failed to establish that Trin breached the 2014 Factoring Agreement, and, thus, has failed to establish that Defendant breached the 2014 Guaranty. Plaintiff asserts that the 2014 Factoring Agreement "specifically states that Amerifactors is entitled to recover damages if Trin failed to meet its $11,000,000.00 volume requirement." Doc. 20 at 5.[7] Under Plaintiff's interpretation of the volume provision, Trin was required both to sell $11,000,000.00 in product, and to sell Plaintiff $11,000,000.00 in accounts generated by the sale of that product.  Such an interpretation is belied by the plain language of the volume provision, which provides, in its entirety, as follows:

> **Volume.** You will sell to us $11,000,000 of your Accounts (except cash sales) generated between the date of this Agreement and April 24, 2015.  During the term of this Agreement, we will purchase, in the aggregate, Accounts up to $11,000,000, subject to other terms and conditions of this Agreement.  You agree that we are entitled to recover damages if you fail to perform your obligations under this agreement.

Doc. 1-2 at 3.

---

[7] Plaintiff presents no other argument in support of this interpretation of the volume provision. *See* Doc. 20 at 5-10.

Specifically, Plaintiff's argument fails for two reasons.  First, the plain language of the volume provision did not require Trin to sell $11,000,000.00 of its product, let alone did it require Trin sell that quantity of product during each term of the 2014 Factoring Agreement, assuming it renewed annually.  Second, there is nothing in this provision that suggests that Trin would be liable to Plaintiff for damages if it failed to sell its product (i.e., generate accounts) and then sell $11,000,000.00 worth of accounts to Plaintiff.[8]  The plain language of the provision, instead, required Trin to sell Plaintiff $11,000,000.00 in accounts that it "generated" between April 24, 2014 and April 25, 2015.  Thus, Trin was required to sell Plaintiff accounts that it "generated" through the sale of its product, and would only be liable for any damages caused by its failure to sell "generated" accounts to Plaintiff.  There are no allegations or evidence that Trin failed to sell Plaintiff all of the accounts it generated during each term of the 2014 Factoring Agreement.  *See* Docs 1; 20; 21.  Thus, Plaintiff failed to establish that Trin breached the 2014 Factoring

---

[8] The absence of such language stands in stark contrast to the volume provision in the 2015 Factoring Agreement, which provided, in its entirety, as follows:

> **Volume.**  You shall sell us $<u>ALL RESINTECH INT'L LLC INVOICES</u> of your Accounts (except cash sales) generated between the date of this Agreement and <u>December 30, 2016</u>.  During the term of this Agreement, we will purchase, in the aggregate, Accounts up to $<u>ALL RESINTECH INT'L LLC INVOICES</u>, subject to other terms and conditions of this Agreement.  You agree that we are entitled to recover damages if you fail to perform your obligations under this *paragraph regardless of whether or not you actually generate the required account volume.  Damages will be computed by multiplying the amount by which you fall short of this volume requirement by the lowest percentage fee to be earned or retained by us as computed by reference to paragraphs 5 and 6 above.*

Doc. 1-2 at 23 (emphasis added).  This provision, unlike its counterpart in the 2014 Factoring Agreement, clearly contemplates that Plaintiff would be able to recover damages from Trin regardless of whether Trin actually generated the required account volume.  The italicized language does not appear in the 2014 Factoring Agreement.

Agreement, and, consequently, failed to establish that Defendant breached the 2014 Guaranty.[9] Therefore, the undersigned finds that Plaintiff is not entitled to default judgment against Defendant on its claim for breach of the 2014 Guaranty.

### 2.   Plaintiff has established that Defendant breached the 2015 Guaranty.

According to Plaintiff, it owns $121,288.80 in unpaid Resintech accounts that were purchased from Trin under the 2015 Factoring Agreement.  Doc. 20 at 17.  Plaintiff, relying on the recourse provision of the 2015 Factoring Agreement, requested that Trin repurchase those unpaid accounts, but Trin, then in Chapter 7 bankruptcy, was unable to do so.  *Id.* at 17-18.  With Trin allegedly in breach of the 2015 Factoring Agreement, Plaintiff maintains that Defendant was required to satisfy Trin's obligation to repurchase the unpaid Resintech accounts pursuant to the terms of the 2015 Guaranty.  *Id.* at 18.  Plaintiff asserts that Defendant failed to satisfy that obligation and, thus, breached the 2015 Guaranty.  *See id.*   Plaintiff seeks to recover its actual damages under the 2015 Factoring Agreement (i.e., $121,288.80).  *Id.*

The undersigned finds that Plaintiff has established that Trin breached the 2015 Factoring Agreement and that Defendant breached the 2015 Guaranty.  Plaintiff and Trin entered into the 2015 Factoring Agreement, which provided, in relevant part, that Plaintiff would purchase Resintech accounts from Trin on a recourse basis.  Doc. 1 at ¶ 20; *see* Doc. 1-2 at 22-28.  Plaintiff purchased a total of $121,288.80 in Resintech accounts under the 2015 Factoring Agreement prior

---

[9] The undersigned would reach the same conclusion even if the undersigned found that the volume provision was ambiguous.  The ambiguity would relate to whether Trin was required to sell Plaintiff $11,000,000.00 in accounts during each term of the 2014 Factoring Agreement.  "An ambiguous term in a contract is to be construed against the drafter." *City of Homestead v. Johnson*, 760 So.2d 80, 84 (Fla. 2000).  The 2014 Factoring Agreement was drafted by Plaintiff.  Doc. 1-2 at 2-7.  Thus, even if the undersigned were to find that the volume provision is ambiguous, the undersigned would construe it against Plaintiff, and, consequently, find that the volume provision did not require Trin to generate and sell Plaintiff $11,000,000.00 in accounts during each term of the 2014 Factoring Agreement.

to Trin filing for bankruptcy in July 2016.  Doc. 1 at ¶ 22.  The Resintech accounts Trin sold to Plaintiff remain unpaid.  *Id*.  Plaintiff elected to terminate the 2015 Factoring Agreement in light of Trin's bankruptcy; the termination provision of the 2015 Factoring Agreement permitted Plaintiff to terminate the agreement without notice in the event Trin filed for bankruptcy.  Docs. 1-2 at 23; 21 at ¶ 37.  Plaintiff also requested that Trin repurchase the unpaid Resintech accounts pursuant to recourse provision of the 2015 Factoring Agreement, which permitted Plaintiff to request such relief in the event the agreement was terminated or the Resintech accounts remained unpaid for more than 150 days.  Docs. 1 at ¶ 22; 1-2 at 24; 21 at ¶ 37.  Plaintiff alleges that Trin failed to repurchase any of the unpaid Resintech accounts, Docs. 1 at ¶ 28; 21 at ¶ 37, resulting in a material breach of the 2015 Factoring Agreement.  Plaintiff requested that Defendant cover Trin's liabilities pursuant to the terms of the 2015 Guaranty, which contains an unconditional guaranty the Defendant will satisfy all liabilities, obligations and indebtedness of Trin.  Docs. 1 at ¶ 30; 1-2 at 31.  Defendant, however, has not made any payments, Doc. 1 at ¶ 30, resulting in a material breach of the 2015 Guaranty.  Thus, Plaintiff has established that Trin breached the 2015 Factoring Agreement, that Plaintiff suffered a total of $121,288.80 in damages as a result of Trin's breach, and that Defendant breached the 2015 Guaranty by failing to pay Plaintiff the foregoing amount.[10]  Therefore, the undersigned finds that Plaintiff is entitled to default judgment against Defendant on his claim for breach of the 2015 Guaranty.

---

[10] The undersigned notes that Plaintiff received additional monies from Resintech in relation to a settlement agreement between Plaintiff and Resintech that arose in an unrelated case.  *See* Doc. 20 at 10-14.  Plaintiff elected to apply those monies to Resintech's unpaid accounts that accrued under the 2014 Factoring Agreement, as opposed to the unpaid accounts that accrued under the 2015 Factoring Agreement.  *Id*. at 14; *see White Constr. Co., Inc. v. Dupont*, 478 So.2d 485, 487 (Fla. 1st DCA 1985).

IV.     **CONCLUSION**.

Accordingly, it is **RECOMMENDED** that:

1.  The Motion (Doc. 20) be **GRANTED** as follows;

    a.  The Court find that Defendant breached the 2015 Guaranty;

    b.  The Court enter default judgment against Defendant with respect to the 2015 Guaranty; and

    c.  The Court award Plaintiff a total of $121,288.80 for breach of the 2015 Guaranty;

2.  The Motion (Doc. 20) be **DENIED** in all other respects; and

3.  The Clerk be directed to close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on October 20, 2017.

_____
DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy